IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SHERMAN SEAY MORRIS, III,**     } | |
| } | |
| **Plaintiff,**     } | |
| } | |
| v.     } | Civil Action No.: 5:14-cv-02387-RDP |
| } | |
| **CAROLYN W. COLVIN,**     } | |
| **Acting Commissioner of Social Security,**     } | |
| } | |
| **Defendant.**     } | |

**MEMORANDUM OF DECISION**

Plaintiff, Sherman Morris, brings this action pursuant to Sections 405(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.     Proceedings Below**

Plaintiff filed applications for a period of disability, disability insured benefits, and supplemental security income in January 2012, in which he alleged he became unable to work beginning October 1, 2008. (R. 170-83). Plaintiff timely requested a hearing at which he appeared in February 2013. (R. 27-63, 122). On April 26, 2013, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications. (R. 11-22). On appeal, the Appeals Council denied Plaintiff's request for review. (R. 1-4). Therefore, Plaintiff has properly

exhausted his administrative remedies, filed a timely action in this court, and the case is ripe for review.  42 U.S.C. §§ 405(g), 1383(c).

## II.   Facts

Plaintiff was 39 years old on the date of the ALJ's decision.  (R. 174).  He had a high school education and attended three years of college.  (R. 30).  He previously worked as a machine operator, child-care attendant, and general laborer.  (R. 33, 37).

Plaintiff alleges he is disabled due to depression, back problems, and foot problems. (R. 200).  Although Plaintiff alleges that he has been disabled since October 1, 2008, he last worked for approximately a week and a half packing sugar in December 2011 at a sugar plant. (R. 33). Prior to that, Plaintiff worked on and off for approximately four years as a public relations director at a church daycare center.  (R. 33).  In this position, Plaintiff earned $12,066 in 2009 and $12,574 in 2010, and those earnings exceeded the requisite amounts for those years.  (R. 185).

In approximately 2004, Plaintiff was injured at work.  He sustained an injury to his back as a result of this incident and later underwent surgery for a hernia.  (R. 38).  In 2012, he was injured in a car wreck.  (R. 47).  Plaintiff has been diagnosed with back pain with radiculopathy, lumbar facet syndrome, and degenerative disc disease, all of which cause him to suffer from chronic pain. (R. 260).  He reports that the pain is continuous, radiates from his lower back down his right leg, as well as his shoulder blades, and is aggravated by long periods of sitting, standing, or lying down.  (R. 54-55; 276).  He also loses feeling in his arm and his hand. (R. 54).

On average, Plaintiff rates the pain at approximately a 5-6 out of 10 in severity (R. 54; 272-280), but can elevate to 6-8 out of 10 on a bad day.  (R. 54).  According to Plaintiff, he has bad days a few times per week.  (R. 55).  Plaintiff previously attempted to treat his pain with

2

physical therapy; however, he indicates the therapy made the pain worse.  (R. 317).  At the time of the hearing, Plaintiff too Lortab for treated his chronic pain.  (R. 54).

Plaintiff first began to experience symptoms associated with various mental illnesses following a divorce in approximately 2010.  (R. 40).  In August 2010, Plaintiff sought treatment from his primary care physician for anxiety problems after experiencing a panic attack.  (R. 304).  On March 20, 2012, he underwent a psychological evaluation.  (R. 354).  The evaluation revealed that he had concentration and memory problems, was severely depressed, and that his circumstances would "affect his ability to function independently."  (R. 357).  In early 2012, Plaintiff began receiving treatment from the Mental Health Center of North Alabama for depressive disorder and anxiety disorder; he also presented with psychosis, paranoia, and visual hallucinations.  (R. 389-392).

Plaintiff has reported depression, anxiety, paranoia, and hallucinations.  (R. 448-447). He also has reported that his sleep is affected because of pain and anxiety. (R. 210).  However, at the hearing, he testified that he was no longer experiencing sleeping problems.  (R. 46).  He reported that he has poor hygiene, has trouble paying bills, handling savings accounts and using a checkbook, constantly has to re-read instructions, and does not handle stress well.  (R. 210, 212, 214-215).  At the hearing, he testified that he is able to handle his finances.  (R. 48).  He further testified that he stopped going to church after his 2012 car accident.  (R. 47).  He does not have problems talking with others, he just does not want to do so.  (R. 49).

In November and December 2011, Plaintiff was seen by Ahmad Shikh, M.D., at the Valley Pain Clinic on a referral from his family physician, Dr. Malcolm Hendricks.  (R. 249-281).   Dr. Shikh saw Plaintiff for an initial visit on or about November 16, 2011.  During that visit, Plaintiff reported that his chief complaint was back pain, and that the pain was located in

the lower back and radiated to the right leg. (R. 272). He described the pain as constant, dull, aching, exhausting, and unbearable at times. (R. 272). Plaintiff described the pain as ranging from 5-6 up to 9 on a 10 pain scale. Dr. Shikh noted that Plaintiff's "daily activities are moderately limited due to the pain" and that "the pain is relieved by lying down, the pain medications, and a hot bath with Epsom salt." (R. 272). Dr. Shikh noted that Plaintiff was alert and "oriented x 3" and that he "ambulates with a Normal Gait," and had a "Normal Range of motion of lumbar spine with pain." (R. 272).

Plaintiff returned to see Dr. Shikh on or about November 30, 2011. (R. 260). At that time, he reported a pain level of 5/10 and that his daily activities were moderately limited due to the pain. (R. 260). Dr. Shikh noted that "the pain [] is relieved with medication." (R. 260). Although Plaintiff reported he was not taking the medication as prescribed, "they are helping." (R. 260). Dr. Shikh set forth his "Plan/Recommendation" as follows: "Continue current mediations as he states the medicines helped him to tolerate his pain and helped to improve his function with no significant side effects." (R. 260). He further recommended a "home based exercise program; posture and body mechanics training." (R. 260). Dr. Shikh noted that physical therapy and a chiropractor had been tried, but was not helpful, and that injections were only helpful for a short period. (R. 262). Under "Review of Symptoms" Dr. Shikh stated that Plaintiff denied major depression and suicide ideation or thoughts. (R. 263).

Dr. Hendricks has treated Plaintiff since at least 2008. (R. 287-352). On January 23, 2012, Plaintiff saw Dr. Hendricks for an evaluation of symptoms of depression. (R. 288). Although Dr. Hendricks indicated that Plaintiff's "symptoms suggest depression with possible psychotic features" and that "he needs to see a psych," he also noted he would start Plaintiff on a mood stabilizer and Trazadone for sleep in the interim until Plaintiff could have a psychiatric

4

consultation. (R. 288). Previously, Plaintiff had seen Dr. Hendricks for hypertension (R. 290) and back pain. (R. 313-314). In 2009, Plaintiff reported to Dr. Hendricks that his back pain was improved with medication. (R. 313-314). On January 12, 2010, Plaintiff reported to Dr. Hendricks that he was going through a divorce and "has been taking more of his pain medication because he ha[d] recently started a business in [which] he cuts hair. He still feels that he needs disability." (R. 309). On April 15, 2010, Plaintiff saw Dr. Hendricks for a follow up on shoulder pain. (R. 306-7). Under "Plan," Dr. Hendricks notes, "Pt cont to request disability and I refuse to place him on disability he appears fully functional to me and capable to work in the workforce. … visit was 30 plus minutes and most of time spent discussing disability and reason for refusal." (R. 306).

On January 26, 2012, Plaintiff was seen at the Mental Health Center of North Central Alabama by Counselor Louisa DiLeone. (R. 402-406). In this Assessment/Intake report, Ms. DiLeone noted that Plaintiff reported that he was in the process of applying for disability. (R. 402). She determined that Plaintiff was suffering from Depressive Disorder NOS and Anxiety Disorder. (R. 403). She assigned Plaintiff a GAF score of 54. (R. 403). Ms. DiLeone's plan was for Plaintiff to return in two weeks so she could assess him for appropriate services and to formulate a treatment plan. (R. 406).

On February 12, 2012, Plaintiff filled out a pain questionnaire for the Disability Determination Service. (R. 227-228). In that questionnaire, Plaintiff reported that his pain medications relieve his pain for about three hours with no side effects. (R. 227-228).

Also in February 2012, Plaintiff's therapist stated that he was in need of a "higher level of care" because he was "isolating at home, feels hopeless, and is experiencing paranoia. [Plaintiff] reported passive suicidal ideation." (R. 397). Later that month, Plaintiff's treatment

notes indicate he was sleeping all day, had poor hygiene, as well as paranoia and hallucinations, and was viewed as a moderate suicide risk. (R. 399). Throughout March and April 2012, Plaintiff was described by his therapists as being "dysphoric and tearful" with socialization being severely impacted and having a flat affect and depression (R. 360, 362). Plaintiff also reported that he lies down all the time to avoid activities. (R. 380). He was hospitalized for depression from November 14 through 16, 2012, and indicated a few weeks prior that he had suicidal ideations. (R. 450-453).

In a Function Report prepared by Joniqua Carrington on February 21, 2012, Plaintiff reported that he lives alone. (R. 209). During the day he goes to doctors' appointments if scheduled, and does light work around the house. (R. 209). He stated that he takes care of his daughter, providing all emotional and financial support for her. (R. 210). He showers and uses the toilet without help. (R. 210). He prepares frozen meals and makes his bed. He does not do yard work because of metal plates and screws in his hand. (R. 211). He goes outside three times a week. He drives a car, uses public transportation, and shops in stores and by phone for food and household products. (R. 212). He reported he talks with others, watches television, and attends church. (R. 213). He is able to follow in depth verbal instructions as well as can follow written instructions, but has to re-read them. (R. 214).

On March 20, 2012, Plaintiff was seen by Annie M. Wells, a Licensed Psychologist. (R. 353-357). Ms. Wells noted that Plaintiff was on antidepressant medications and that "he indicated that he feels better when he takes his medications." (R. 354-355). Although Ms. Wells gave Plaintiff a GAF score of 45, she noted that his "intellectual functioning is Average." (R. 356).

Melissa Neel, who testified as a Vocational Expert ("VE") at Plaintiff's hearing before the ALJ, characterized Plaintiff's past work as a childcare center manager (sedentary, skilled), extruder operator (medium, skilled), and helper (heavy, unskilled). (R. 37). The VE further testified that someone such as Plaintiff would be unable to perform Plaintiff's past relevant work given his current restrictions; however, assuming such a person was as impaired as Plaintiff claims to be, there would be no jobs in the state of Alabama or the U.S. economy he/she could perform. (R. 62).

However, the Ms. Neel testified that, based on the following assumptions:

- a person such as Plaintiff could perform a range of light work with frequent use of the bilateral lower extremities for the operation of foot controls, as well as for pushing and pulling;

- a person such as Plaintiff could occasionally climb ramps and stairs, but can never climb ropes, ladders or scaffolds;

- a person such as Plaintiff could occasionally balance, stoop, kneel, crouch and crawl;

- a person such as Plaintiff could to avoid all exposure to hazards including unprotected heights; and

- a person such as Plaintiff could perform unskilled work with occasional interaction with supervisors and co-workers and infrequent interaction with the general public;

such an individual would be able to, with a gradual changes in a workplace setting and job duties, perform other work in the state or national economy. Specifically, the person could perform the light, unskilled jobs of housekeeper/cleaner (1500 in Alabama, 132,000 in the U.S.), marker (4200 in Alabama, 313,000 in the U.S.), or work on a conveyor line (600 in Alabama, 13,000 in the U.S.). (R. 61-62).

### III.   The ALJ's Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

8

is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  (R. 13).  The ALJ next found that Plaintiff had engaged in substantial gainful activity since his alleged onset date of October 1, 2008.  (R. 13).  Specifically, the ALJ found that Plaintiff's work activity rose to the level of SGA through 2010, a finding not disputed by Plaintiff.  (R. 13, 185).  Therefore, the ALJ found that Plaintiff was able to "participate in vocational activity well after the alleged onset date."  (R. 13).  If a claimant receives wages exceeding those set out in an earnings guidelines table, a presumption arises that he was engaged in substantial gainful activity during that period.  *See* 20 C.F.R. §§ 404.1574(b)(2); 416.974(b)(2); *see also Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991) (noting that earnings on income tax returns create a rebuttable presumption that the taxpayer was gainfully employed).  Nonetheless, despite this finding, the ALJ proceeded to evaluate the remaining steps in the process.

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, radiculopathy, lumbar facet syndrome, left foot Haglands deformity, Achilles tendonitis, obesity, spondylolisthesis, left foot fractures, L2-3/L5-S1 bulges with foraminal encroachment and no significant stenosis, as well as depression, a mood disorder, and anxiety with psychotic features.  (R. 14).  The ALJ found that these impairments caused a "significant limitation in the [Plaintiff]'s ability to perform basic work activities."  (R. 14).

At the fourth step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). In making this finding, the ALJ considered whether the paragraph B criteria were satisfied. (R. 14). Those criteria require two of the following: marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulty in maintaining concentration, persistence, or pace, or reported episodes of decomposition, each of extended duration. (R. 15). The ALJ found that the evidence only showed mild restrictions in Plaintiff's activities of daily living. The ALJ specified that Plaintiff's testimony was that he was unmotivated to engage in such activities, but was unable to do so. (R. 15). As to his social functioning, the ALJ found that the evidence demonstrated only moderate difficulties. The ALJ found that the evidence showed that Plaintiff was able to use public transportation, shop in stores, attend church, and spend time conversing with others. (R. 15). The ALJ found Plaintiff had only moderate difficulties with concentration based on his own reports, and his ability to watch television, which requires some concentration. (R. 15). The ALJ also found that there was no evidence of an episode of decompensation of any extended duration. (R. 15).

Finally, the ALJ found that, although Plaintiff could not perform his past relevant work (R. 20), based on the testimony of the VE, Plaintiff could perform representative occupations of housekeeper/cleaner, marker, and conveyor line job, each of which existed in significant numbers in the national economy. (R. 21, 61-62). The ALJ accepted that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 17). However, he found that Plaintiff's statements concerning the intensity, persistence, and limiting

effects of those symptoms were not entirely credible. (R. 17). The ALJ explained the reasons for that conclusion in detail. (R. 17).

The reasons given by the ALJ for not crediting Plaintiff's statements concerning the intensity, persistence, and limiting effect of those symptoms included reports by Plaintiff -- to medical providers and on his pain questionnaire -- that his pain is tolerable when taking pain medications. Furthermore, the medical evidence in the record makes clear that Plaintiff had a normal gait and a normal range of motion. As to Plaintiff's mental impairments, the ALJ explained that Plaintiff's Functions Report indicated that he was not motivated to perform certain functions, not that he was unable to do so. The AL also concluded that the medical evidence supports the conclusion that Plaintiff felt better when he was taking his antidepressant medications. (R. 354-355).

## IV.   Plaintiff's Argument for Reversal

Plaintiff raises two arguments on appeal, both of which essentially contend that the ALJ's decision was not supported by substantial evidence. First, Plaintiff contends that the ALJ erred in failing to properly credit his Plaintiff's testimony and evidence regarding his chronic pain. Second, Plaintiff contends that the ALJ erred in failing to properly credit Plaintiff's testimony and evidence regarding his mental impairments.

## V.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After careful review, the court finds the ALJ's findings are supported by substantial evidence and that the ALJ applied correct legal standards. For the reasons discussed below, the ALJ's decision is due to be affirmed.

    **A.     The ALJ Properly Evaluated the Credibility of Plaintiff's Testimony Regarding Disabling Symptoms**

Plaintiff contends that the ALJ erred in failing to properly credit his evidence regarding his chronic pain. The court disagrees. The ALJ articulated several valid reasons which support his decision not to credit Plaintiff's subjective pain testimony, and those reasons are supported by substantial evidence in the record.

According to the regulations set forth by the Social Security Administration, Plaintiff's statements regarding his alleged disabling pain are not, alone, enough to establish a disability. *See* 20 C.F.R. § 401.1529(a). The pain standard is comprised of both a threshold inquiry and a credibility determination. If a claimant meets the threshold inquiry, the ALJ is called upon to evaluate other factors to determine the credibility of the claimant's allegations of subjective symptoms. (*Id.*).

In order for a claimant to satisfy the threshold inquiry, he must present (1) evidence of an underlying medical condition, and (2) either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

After the threshold inquiry is met, if the ALJ discredits a claimant's subjective testimony of disabling pain, the ALJ "must clearly articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991). As part of the analysis used in determining credibility, the ALJ looks at intensity and persistence of the symptoms alleged by a claimant, as well as the extent to which the alleged symptoms affect the claimant's functional limitations. *See* 20 C.F.R. § 404.1529.

In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). There are certain determinations that are solely within the province of the ALJ, and a determination of credibility is one of those. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Indeed, it is well-established that a reviewing

court "will not disturb a properly articulated credibility finding that is supported by substantial evidence." *Strickland v. Comm'r of Soc. Sec.*, 516 Fed. App'x 829, 832 (11th Cir. 2013).

Here, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (R. 17). However, he further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible and explained his reasons for that finding. In particular, the ALJ found that the medical evidence established that Plaintiff was able to function physically and mentally, even with his impairments. When Dr. Stoddard at SportsMed examined Plaintiff for lower back pain, she noted that Plaintiff had a normal gait, good hip movements, only slight obesity, and no sign of acute distress or joint tenderness. (R. 413-415). In August 2010 and March 2011, Plaintiff sought treatment at Parkway Medical Center for swelling. (R. 416-432). Physical examination revealed intact motor/sensory/neurological functions, a normal affect, alertness, intact orientation, equal motor strength and a well-appearing male. There were no signs of acute distress. (R. 416-432). The ALJ determined that these types of medical reports indicated that Plaintiff was stable mentally and physically. (R. 17-19). Furthermore, medical reports indicated that Plaintiff's pain was improved or stabilized with medications. (R. 416-417). An August 2010 report indicated that Plaintiff performs ADLs independently. (R. 416).

When Plaintiff was seen at the Valley Pain Clinic in late 2011, he reported that his pain medications were helping. (R. 260). The ALJ noted that physical examinations of Plaintiff revealed alertness, intact orientation, fluent speech, a normal gait, normal lumbar spine range of motion, normal heel-toe walk, and normal neurological/sensory/motor. (R. 249-281). The ALJ noted that these reports were consistent with Plaintiff's pain questionnaire, which reported that Plaintiff's pain medications relieved his pain with no side effects. (R. 18, 227-228).

The ALJ also reviewed Plaintiff's records from Decatur Orthopaedics Specialists. (R. 282-286). Those records reported that Plaintiff's pain was only mild to moderate in severity and his psychiatric system was negative for any psychiatric disorder. (R. 282-286).

Plaintiff was regularly treated at Hendricks Family Practice from 2008 through 2012. (R. 287-352). The ALJ noted that Plaintiff had reported to Dr. Hendricks that, in January 2010, he was starting a barber business, which certainly indicates that Plaintiff was able to function vocationally at that time. (R. 19, 309).

The ALJ also reviewed the medical evidence specific to Plaintiff's mental issues. (R. 19). He noted that in 2012 Annie Wells, a licensed psychologist, performed a consultative psychological examination of Plaintiff. (R. 19, 253-257). She assessed Plaintiff as suffering from major depression, but noted that he felt better when he took his medications. (R. 253-257). The ALJ found this to be an indication that Plaintiff's mental conditions were also improved with treatment and/or medication. (R. 19, 253-257). Ms. Wells assigned Plaintiff a GAF score of 45, but the ALJ afforded this score little weight because it was largely based on Plaintiff's subjective complaints. (R. 19).

The ALJ also reviewed Plaintiff's treatment records from early 2012 from the Mental Health Center of North Central Alabama (Dr. Gamble) for depressive disorder. (R. 19, 358-406). Here, the ALJ noted Plaintiff was awarded a GAF score of 54 which indicated only moderate symptoms or difficulties. (R. 19, 403). The ALJ gave substantial weight to this GAF score because it was from a treating source, rather than a consultative source, and was consistent with many mental status findings which could be gleaned from the medical record as a whole. (R. 19). The January and February mental status examinations of Plaintiff found in the records from the Mental Health Center of North Central Alabama report that Plaintiff had an appropriate

15

affect, appropriate speech/thought processes/thought content, adequate judgment/insight, and appropriate perceptions. (R. 358-406). In April 2012, Plaintiff was found to be alert, have intact orientation, be logical, and to demonstrate goal directed thought processes. (R. 360-363). In addition, Plaintiff denied suicidal ideations. (R. 360-363). This evidence fully supports the ALJ's finding that, despite his depression and anxiety, Plaintiff's mental status was improving. (R. 19).

Finally, in May 2012, Plaintiff was evaluated by a DDS physician who reported that Plaintiff was able to perform light work, with certain limitations. (R. 76-105). The ALJ afforded these opinions considerable weight because they were consistent with the majority of the medical evidence. (R. 19). The ALJ also noted that this finding was consistent with (1) medical observations that Plaintiff's conditions improved with medication, (2) the fact that Plaintiff engaged in SGA in 2009 and 2010, and (3) participated in some vocational activity in 2011, all well after the alleged onset date of Plaintiff's claimed disability. (R. 19-20).

The ALJ clearly articulated his reasons for discrediting the extent of Plaintiff's subjective symptoms. *See Dyer*, 395 F.3d at 1210; *Holt*, 921 F.2d at 1223. Those reasons were not only explicit, but are adequate and supported by substantial evidence in the record. This court will not disturb a properly articulated credibility finding that is supported by substantial evidence. *Strickland*, 516 Fed. App'x at 832. Because the ALJ's credibility findings are supported by substantial evidence and the correct legal standards were applied, those findings are due to be affirmed.

      **B.**    **Substantial Evidence Support's the ALJ's Determination that Plaintiff Did Not Meet Listings 12.04 and 12.06**

Plaintiff next argues that the ALJ improperly found he did not meet the requirements of Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders). To reiterate, however,

16

this court's review of the ALJ's findings is limited. If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the court believes the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.

The ALJ's determination that Plaintiff did not meet the listings was in large part based on his finding that the medical evidence failed to show a *marked* restriction of Plaintiff's ability, or any *inability*, to perform his activities of daily living. (R. 14-15). The ALJ found that the medical evidence established only a mild restriction. (R. 14-15). In reaching this conclusion, the ALJ employed an analysis similar to that employed when making a credibility finding related to subjective complaints of pain. (R. 15). The ALJ specifically noted that, while the medical evidence supported a finding that Plaintiff is "not motivated" to maintain his self-care, it did not indicate that he was *unable* to care for himself or perform any particular activities. (R. 15).

This finding is supported by substantial evidence in the record. The record contains evidence that Plaintiff engaged in substantial gainful activity in 2009 and 2010. (R. 185). That evidence shows that, in January 2010, Plaintiff had reported to Dr. Hendricks that he was starting a barber business. (R. 309). In Plaintiff's psychological assessment in March 2012, Ms. Wells noted that Plaintiff was on antidepressant medications and that "he indicated that he feels better when he takes his medications." (R. 354-355). This evidence indicated to the ALJ that Plaintiff was able to function vocationally. (R. 17-18).[1]

The ALJ properly determined that Plaintiff's subjective reports indicating a lack of motivation do not support a finding that he had a "marked" restriction or an inability to function, although they were sufficient to support a finding of mild restrictions in activities of daily living and social functioning. Of course, the criteria of listings 12.04 and 12.06 require "marked"

---

[1] Further support for this conclusion is found in Plaintiff's February 21, 2012 Function Report. (R. 209-214).

restrictions. There is substantial evidence in the record supporting the ALJ's determination that at last two of these criteria were not present and, in making that determination, the ALJ applied the correct legal standards. Therefore, the ALJ's decision is due to be affirmed.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 25, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE